IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Raymond Hans, Gayle Herbert, Jeremy Jackey, Chuck LeBlanc, Larry Richman, Donna Walker, and Michael Webster, on behalf of themselves, Individually and on behalf of All Others Similarly Situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **MEMORANDUM OPINION AND ORDER ON MOTION FOR  CLASS CERTIFICATION** |
| Gary D. Tharaldson, Connie Tharaldson, Roger Tharaldson, Raymond Braun, and James Lochow, as Trustees of the Michelle Tharaldson Trust and as Trustees of the Matthew Tharaldson Trust; South Dakota Trust Company, LLC, as Trustee of the Michelle Lyn Tharaldson Lemaster Dynasty Trust, as Trustee of the Matthew Tharaldson Dynasty Trust, and as Trustee of the Michael Tharaldson Dynasty Trust; and Linda Tharaldson, individually and in her capacity as Trustee for the Michael Tharaldson Trust, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil No. 3:05-cv-115 |
| Defendants, | ) ) | |
| and | ) ) | |
| Tharaldson Motels, Inc. Employee Stock Ownership Plan, | ) ) ) | |
| Nominal Defendant. | ) | |

Before the Court is a Motion to Certify Class dated December 21, 2007, filed by Plaintiffs

Gayle Herbert, Jeremy Jackey, Donna Walker, and Michael Webster. (Docket 176).[1]  Defendants

---

[1] The Court previously dismissed Plaintiffs Raymond Hans, Chuck, LeBlanc, and Larry Richman, finding they lack standing in this litigation.  (Docket 159).  Following additional

Gary and Connie Tharaldson resist Plaintiffs' motion. (Docket 225). Defendants James Lochow, Linda Tharaldson, Roger Tharaldson, Raymond Braun, and South Dakota Trust Company join in the response of Gary Tharaldson and Connie Tharaldson. (Docket 227).  This Court held an evidentiary hearing from December 8-10, 2008. (Docket 315-317).  The parties submitted closing arguments on January 15, 2009.

In February 2009, Defendants Gary and Connie Tharaldson filed a Motion for Leave to File a Supplemental Brief in Opposition to Class Certification and for Leave to Exceed the Page Limits for Memoranda.  (Docket 415, 422).  Additional Defendants jointed in Tharaldsons' Motion. (Docket 419).  The Court is well-versed on the facts giving rise to the claims in this action as well as the law on class certification; therefore, Defendants' Motions for Leave to File Supplemental Briefs and Exceed the Page Limits for Memoranda are **DENIED**.  (Dockets 415, 419, & 422).

In June 2009, the Court granted a joint motion to stay proceedings allowing the parties an opportunity for court-sponsored mediation.  (Docket 397).  On March 10, 2010 the Court lifted the stay.  (Docket 430).   The Court has carefully considered the facts presented in the litigation, the evidence presented at the hearing, and the arguments submitted by the parties and now issues this memorandum opinion and order.

<u>**SUMMARY OF THE HOLDING**</u>

The litigation arises out of the purchase in 1998 or 1999 of Tharaldson Motels, Inc. stock by the Tharaldson Employee Stock Ownership Plan.  Participants in the Plan include employees of Tharaldson Motels, Inc. who are at least 21 years old and have completed at least six months of

---

briefing and an analysis of recent authority, the Court granted Plaintiffs' motion to reconsider and reinstated these individuals as plaintiffs after the motion for class certification was filed. (Docket 341).

employment.   Plaintiffs are Plan participants and contend the price paid for the stock was excessive and seek to restore losses sustained as a result of Defendants' breach of fiduciary duty.

Plaintiffs seek to certify this action as a class action under Fed. R. Civ. P. 23(b)(1) and/or (b)(2), or alternatively under Rule 23(b)(3).  Plaintiffs propose a single class consisting of all Plan Participants.  Defendants oppose class certification, contending the interests of the Plan's current employee participants will be impaired by the named Plaintiffs' certification efforts because unlike the current employees, the named Plaintiffs either no longer hold stock in the Plan or no longer have Plan accounts and thus do not stand to gain from the sale of Tharaldson Motels, Inc. or its stock. The Court finds that the interests of the two groups - current employees and former employees -  are not similar or identical and, therefore, certification of a single class is inappropriate.  The Court further finds that the requirements for class certification under Rule 23 have been met with the creation of two subclasses.  Thus, Plaintiffs are hereby appointed class representatives of the Plan Participants that are former employees of Tharaldson Motels, Inc., and North Star Trust Co., the current Plan Trustee, is appointed to represent the Plan participants that are current employees of Tharaldson Motels, Inc.  Accordingly, Plaintiffs' motion for class certification is granted in part and denied in part.

## DISCUSSION

At issue is the purchase of Tharaldson Motels, Inc. ("TMI") stock by an Employee Stock Ownership Plan ("ESOP").  Plaintiffs seek to recover funds representing an alleged excessive price paid for the TMI stock at the time of its purchase by the ESOP in 1998 or 1999. The factual information is taken from the Plaintiffs' Fourth Amended Complaint, which the Court accepts as true for the purposes of this motion.  (Docket 99).

TMI is a holding company that owns and operates hotels in thirty-six states.  In 1998, the Tharaldson Employee Stock Ownership Plan was formed. ("Tharaldson  ESOP" or "ESOP"). Thereafter, the common stock of TMI was sold to the ESOP.  The details of the transaction are in some dispute, but by the end of 1999 all TMI shares were owned by the ESOP.  The transaction was to be partly paid in cash (fifty million dollars) and in promissory notes totaling $456,594,800.00 for all 9,999,900 shares of common stock.  The notes are scheduled to mature from June 30, 2019 to December 31, 2030.  As TMI earns profit, payments are made on the notes and stock from a suspense account  released to the ESOP.  Plan participants are those employees of TMI, at least 21 years of age and who have completed at least six months of employment with TMI.  Eligibility commences on the first January 1 or July 1 after an employee attains the age of 21 and serves six months of employment.  An employee is fully vested after five years of service.  An employee is credited with a year of service if the employee has at least 1,000 hours of work in a year.

Employees are allocated the stock as it is released from the suspense account on the basis of their compensation with TMI in comparison to the total compensation paid by TMI to all eligible employees in the Plan.  Plan participants can also receive shares in their accounts if other participants terminate employment before fulfillment of the five-year vesting schedule under the Plan.  Similarly, when a vested employee terminates employment, the employee may either sell his shares and take a lump sum distribution or sell his shares and convert his interest into a stable value account (essentially a money market account) and remain in the Plan.  If the Plan is terminated, as it would be after a sale of TMI, all the shares will be sold to the purchaser of TMI and the proceeds would be  allocated to those still in the employment of TMI at the time of the sale.  A sale of TMI would also cause the allocation of the remaining unallocated shares to be divided among those

employees still in the Plan.

The Complaint alleges Gary Tharaldson, as the sole Director of TMI and the Trustee of the ESOP, breached his fiduciary duties of prudence and loyalty under ERISA Section 404 in connection with the sale of the TMI shares to the ESOP.  (Counts I and II). The gist of the claim is that these transactions were approved by Gary Tharaldson and prohibited by ERISA Section 406(a)(1)(A), (B), and/or (D) because the sale of the TMI shares was not for adequate consideration and the sale of the stock was in excess of market value. (Counts III and IV). The Complaint also alleges that the Selling Defendants knowingly participated in the breach of fiduciary duties to their benefit in violation of Section 502(a)(3) of ERISA, resulting in a constructive trust in favor of the Plan participants.  (Counts V and VI).

Reduced to its simplest terms, the Fourth Amended Complaint alleges that the ESOP and its participants paid an excessive price for TMI stock due to misconduct on the part of the defendants and those privy to them, who are Plan fiduciaries, in particular that the valuation did not include a reduction in value due to the existence of ESOP loans and further that there was no appropriate deduction for a minority discount due to the way the shares were sold to the ESOP.  The Complaint seeks to recover any losses to the ESOP resulting from those fiduciary breaches, as well as any profits made by the fiduciaries or their privies, which may have been made through use of Plan assets in which assets the Plan would have a constructive trust.

The fiduciary Defendants sold all their stock to the ESOP which constituted the vast majority of stock purchased by the ESOP.  Some small number of shares were sold by individuals who were not Plan fiduciaries and an additional two percent of the shares were sold to the Plan by the FM Foundation.  Plaintiffs have not named these non-fiduciary sellers as defendants.  Construing the

5

Complaint as a whole, Plaintiffs are alleging that the value of their defined contribution accounts would have been far greater had the price paid for the stock sold to the  ESOP been at the lower fair market price with the appropriate discount.  That is, Plaintiffs contend their Plan shares would have been worth more and they would have been credited with more stock sooner and in a greater amount had the price paid for the stock been at market or fair value rather than the inflated price actually paid for the stock by the ESOP, resulting from the fiduciary misconduct on the part of the fiduciary Defendants.  This action is purported to be brought on behalf of all current and former employees of TMI who were or are participants in the ESOP to restore losses suffered by the Plan due to the breach of fiduciary duty by Defendants in connection with the sale of the TMI stock to the ESOP in 1998 or 1999.  All proceeds of the action would inure to the benefit of the Plan.  Plaintiffs do not seek an individual remedy.

The Plaintiffs and proposed class representatives are all former employees of TMI.  (Docket 99).   Raymond Hans, Chuck LeBlanc, and Larry Richman have received a distribution from the Plan.   Gayle Herbert, Jeremy Jackey, Donna Walker, and Michael Webster are also former employees, but they have not received a distribution for their shares in the Plan.  Since the filing of the Complaint, Plaintiffs have  proposed two current TMI employees, who are Plan participants, as additional representatives for the class, each fully vested in the Plan and at least on the date they testified at the evidentiary hearing, current employees of TMI.  These two individuals are Roy L. Blassingame and Tammy Blake.  Mr. Blassingame is a regional maintenance engineer currently employed with TMI.  He has worked for TMI for over fifteen years.  (Tr. 455, Docket 317).  Ms. Blake is currently employed as a general manager and has worked for TMI for nine years. (Tr. 478, Docket 317).  They have indicated a willingness to serve as additional class representatives if

otherwise qualified under the law.  As pled, any recovery from the stock sale proceeds would go to the Plan and the proposed class would benefit from the recovery according to the terms of the Plan.

Plaintiffs allege that there are 3,300 active participants in the ESOP, 225 separated or retired participants entitled to future benefits, twenty-six retired participants receiving benefits, and seven beneficiaries of deceased participants entitled to or receiving benefits.  Defendants state that at the end of 2006 there were 4,115 active participants in the Plan of which 1,622 are vested.  At that time, there were an additional 1,197 Plan covered individuals who were no longer in TMI employment status.  Eighty-seven Plan participants have not yet taken a distribution, having had their accounts converted to the stable value cash account as provided for in the Plan.

On August 29, 2006, North Star Trust Company replaced Gary Tharaldson as Trustee. North Star is in the business of ESOP management. (Tr. 292, Docket 315; Larson depo., Exhibit 3, Docket 226).  North Star sought to intervene in this action.  (Docket 264)  North Star also attempted to settle all claims with Defendants on behalf of the Plan and sought to have this Court approve the purported settlement.  (Docket 369)  After all attempts to settle failed, North Star withdrew its intervention motion and is not presently a party to this case.  (Docket 409, 433).

Plaintiffs now propose to certify a class of all such persons and their heirs or assigns, who were participants in the Tharaldson ESOP from December 30, 1998, to the present time excluding the fiduciary Defendants.  This proposed class consists of  those employees of TMI that have served long enough to have rights vested under the Plan and who are still employed by TMI together with those employees  who have since left TMI employment but who were Plan participants or continue as Plan Participants even though separated from employment with TMI.

Plaintiffs contend that because the TMI shares were all initially acquired at an inflated cost

($50 per share), that over the life of the ESOP the shares released from the suspense account were purchased at an inflated price and thus all Plan participants have been or will be injured due to the excessive original acquisition price.  Under this view, the fiduciary Defendants and their privies are all enriched at the expense of the Plan participants past, present, and future. Further, Plaintiffs believe that the fiduciary Defendants and their privies will all have received money in excess of what they should have received had fair market value been paid.  Thus, they hold the proceeds in a constructive trust for the benefit of the Plan and the Plan Participants.

## ANALYSIS

### A.   Fed. R. Civ. P. 23(a)

The party seeking class certification bears the burden of  meeting the requirements of Rule 23.  Langbecker v. Electronic Data Systems Corp. 476 F.3d 299, 306 (5th Cir. 2007).   The requirements of Rule 23(a) are numerosity, commonality, typicality and representativeness.  In re Aquila ERISA Litigation, 237 F.R.D. 202, 207 (W.D. Mo. 2006).  The class  must  meet all four requirements for certification.  Langbecker, 476 F.3d at 306.  A class must then also meet one of the requirements of Rule 23(b). In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005). Furthermore, Rule 23(a) must be satisfied as to each subclass.  Paxton v. Union Nat. Bank, 688 F.2d 552, 559 (8th Cir. 1982).

### 1.    Numerosity

Plaintiffs have alleged 3,300 current employees are vested in the Plan.  (Fourth Amended Complaint, Docket 99).  Plaintiffs also allege there are 225 separated, twenty-six retired, and seven deceased employees with vested rights in the Plan.  Plaintiffs assert all of these Plan participants have identical interests and have thus proposed a single class consisting of over 3,500 members.

Defendants allege there are 4,115 active participants in the Plan, 1,622 whom are fully vested. (Docket 225, p. 4).  They also allege there are an additional 1,197 Plan participants who are no longer employed by TMI and have received a distribution.  Finally, Defendants state that eighty-seven Plan participants have been terminated but have yet to take a distribution from the Plan. They have presumably had their shares sold and had the proceeds placed in the stable value fund.  (Docket 225, p. 5).

Rule 23 requires the proposed class to be large enough that joinder of all members is impracticable.  No arbitrary rules regarding the necessary size of classes have been established. Paxton, 688 F.2d at 559.  Taking the number supplied by either Plaintiffs or Defendants, the class is sufficiently numerous to satisfy the numerosity requirements of the Rule.  District courts in this circuit have found the requirement is satisfied with as few class members as forty. Morales v. Greater Omaha Packing Co., Inc., Nos. 8:08 cv 88; 8:08 cv 161,___ F.R.D. ___ , 2010 WL 1049277 (D. Neb. Mar. 17, 2010).  Even though the exact number of potential class members is disputed, it is indisputable that over 3,500 members of a class of present and past employees exist.  This satisfies the numerosity requirement of Rule 23(a).

2.      Commonality

Fed. Rule Civ. P.  23(a)(2) requires the existence of common questions of fact within the class.  Ruppert v. Principal Life Ins. Co., 252 F.R.D. 488, 492 (S.D. Iowa 2008).  This requirement imposes a light burden and does not require commonality on every question raised in the class action.  Id.  The commonality requirement is met if a common issue pervades all class members' claims.  Id.   The appropriate focus of the analysis is on the conduct of the defendant, not the plaintiffs.  Id.

9

Plaintiffs' Complaint alleges that the ESOP paid too much for the shares of TMI at the direction of the Plan fiduciaries to the direct benefit of the fiduciaries and parties in privity with them.  The remedy sought is the tracing and recovery of the alleged excess price paid for each share with those traced funds to be returned to the ESOP for the benefit of all Plan participants.   Thus, this action is being sought for the benefit of the Plan.  If Plaintiffs succeed, the fiduciary Defendants and their privies will have to give back any excess proceeds of the stock purchase arising from the excessive price, with all proceeds flowing back to the Plan.  If the sale price was in fact lower than fair market price or value, every Plan participant has been injured.  Every Plan participant is benefitted if the stock sale proceeds above fair market value are restored by the defalcating fiduciary Defendants.

After considering Defendants' alleged conduct, the following are examples of common questions: Were the Defendants fiduciaries? Did they breach their duties to the Plan? Was the price they or their privies received for their shares above market or fair price?  Did the fiduciary Defendants take steps to recover an excessive payment, if there was one? Were all holders of shares in the ESOP injured by any excessive price paid by the ESOP?  Resolution of these questions is for the benefit of the Plan and satisfies the commonality requirement.

       3.    Typicality

Typicality is met if the claims or defenses of the class stem from a single event or are based on the same legal or remedial theory.  Paxton, 688 F.2d at 561-62.  Plaintiffs contend that claims brought under 502(a)(2) of ERISA are brought in a representative capacity on behalf of the Plan for relief to the Plan as a whole.  Aquila, 237 F.R.D. at 202.  Each representative of the class seeks the same plan-wide relief.  Plaintiffs claim the alleged breach of the fiduciary duty by selling the shares

at an excessive price affects all members of the class whether formerly or currently in the Plan.  As such, each Plan participant, past or present, would suffer an identical concrete injury if the ESOP purchased overpriced shares and thus reduced the number of allocated shares in their ESOP accounts.

Here, the triggering event claimed in the Complaint is the sale by the fiduciary defendants of their shares of TMI stock at an inflated price to the ESOP.  According to the Plaintiffs, the remedy, the trace and recovery of the excessive money paid for the shares under the law of trusts, inures to the benefit of all present and former Plan participants according to the terms of the Plan.  Thus, the legal theory and the remedy is identical for all members of the proposed class.  Plaintiffs reason that the disgorgement of the proceeds of the stock sale will benefit all members of the ESOP equally, Plan participants past and present.

In contrast, Defendants argue that the two groups of employees contained in the proposed class are not similarly situated.  The named Plaintiffs do not currently hold any stock in their ESOP accounts, either they have cashed out and rolled over their proceeds or they hold their ESOP account in a stable value fund.  Defendants contend that any funds Plaintiffs succeed in collecting, even after years of protracted litigation, inure to the former employees' benefit without any risk to the money they have already received from the previous sale of their shares.

It is apparent that Plan participants still in the employment of TMI, whether or not fully vested, are injured by continued litigation in at least two ways: (1) the litigation interferes with the efficient and smooth running of the company, reducing the value of the current employees' shares in TMI; and (2) it makes a possibly lucrative sale of TMI more difficult or even impossible.  Whatever the fair market price of the shares might have been in 1998 or 1999, the present value of

the shares exceeds the $50 purchase price by a factor of four or five, even in the face of a currently unfavorable economic situation. Thus, the prevention of the sale of TMI at a multiplier of the stock value hurts the active employees of the company that are Plan participants in a way that does not injure former Plan participants. Consequently, the interests of the former employees and current employees are not typical. Moreover, the Court is of the opinion that the merits of the typicality prong also directly relate to whether the proposed representatives of Plaintiffs' class have a conflict of interest, as set forth under the adequate representation prong of the Rule 23(a) test.

4.     Adequacy of Representation of the Interests of the Class

The adequacy of representation factor requires both that plaintiff's lawyers be qualified and experienced and able to conduct the litigation. Based on the work done in the case so far, it cannot be seriously disputed that Plaintiffs' attorneys are fully capable of doing the work and possessed of the resources to follow through on the case to its conclusion. However, it is also necessary to examine whether the putative plaintiffs have interests antagonistic to others of those in the proposed class. The second prong to the "adequacy" inquiry seeks to uncover conflicts of interest between named parties and the class they seek to represent. In re Schering Plough Corp. ERISA Litigation, 589 F.3d 585, 602 (3d Cir 2009). It is at this juncture that the Court has concerns.

In a class action, the representative parties adjudicate the rights of all class members. Basic due process requires that the named plaintiffs possess undivided loyalties to the absent class members. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 338 (4th Cir. 1998). In Broussard, three groups of franchisees existed - former franchisees, current franchisees who had released the defendant in return for an "improved" franchise, and current franchise holders who had not made the "new improved" deal with defendant. Id. The court noted that the current franchisees

"forward-looking interest" in the defendant's continued viability might have been tempered in their zeal for damages and prejudiced the "backward-looking interest" of the former franchisees who were only looking for money and did not care about the continued viability of the defendant.  Id.

This case presents the mirror image.  The Plaintiffs here are looking only for money that they contend should have come to them by virtue of a lower share price at the Plan inception, but do not have a stake in the continued viability of TMI or the increase from a favorable sale of TMI to a potential purchaser at a price reflecting the full increase in TMI's value.  As in Broussard, there are three groups in the proposed class before this Court.  First, employees that are still on the payroll at TMI; second, former employees that have terminated their service to TMI but still have funds in the ESOP; and third, former employees that have cashed out their funds either through a rollover or payment.

Under the terms of the Plan, former employees are not allowed to keep their shares in the ESOP in TMI stock but must instead convert their shares to the stable value fund.  Effective in 2006 and thereafter the Plan requires employees who are no longer actively employed with TMI to hold their shares in the stable value fund in the ESOP, or they may roll their cash share into some other qualified plan outside the company-sponsored ESOP or take a cash distribution.   Thus, the interests of the groups are different. Those Plan participants still active in TMI have an interest in continued growth and vitality of TMI.  Those Plan participants no longer working for TMI have no real concern whether the ongoing litigation results in adverse consequences for TMI because any money, great or slight,   won by the class litigation would necessarily be coming from the fiduciary defendants, not TMI.  Whether this litigation harms TMI is unimportant to the former employees. The current employees, however, can see their investment grow due to the increase or appreciation

in the value of their shares as a result of the continued success of TMI. The current employees are acutely concerned with the financial well-being of TMI.

Put another way, the former employees of TMI have no interest in the current value of TMI stock. Even if the stock is rendered worthless by continued expensive and protracted litigation, these plaintiffs are not harmed since they seek a "snapshot" of value in 1998 or 1999. See Roth v. Sawyer-Cleator Lumber Co., 61 F.3d 599, 603 (8th Cir 1995). If the price paid for the shares in 1999 was too high the named plaintiffs stand to get a recovery from the Plan fiduciaries. The current employees, however, may well benefit more from the appreciation of the shares and the sale to a third party. A quick settlement might well be in the current employees' interest. By way of illustration, if the shares should have been worth $25 in 1999 but the sale was made at $50 per share, the former employees would stand to have the value of their ESOP account double. In contrast, even though the current employees would benefit from a finding that the ESOP paid too much for the shares, the "gain" is ethereal if the current value of the TMI shares is substantially reduced by this litigation. As an example, current employees would suffer a real injury if the market price of TMI shares is reduced by half as a result of this litigation, even if they fully "prevailed" in this litigation.

Certain current Plan participants recognize the risks of this litigation. North Star Trust Company alleges it received petitions signed by current employees opposed to the lawsuit. (Docket 225). According to the Court filings, approximately 2,381 employees oppose retention of Plaintiffs' class counsel. This is logical as it is against their interest to prevent a sale due to the continuation of the litigation and the resulting injury to the ongoing operations of TMI. Based on the adverse interests of the two groups of proposed class members, Plaintiffs' lawyers face conflicts in adjudicating the rights and interests of all class members. The only way to ensure that each group

14

of employees is adequately represented is to create two subclasses with separate counsel appointed to represent the interests of each class; otherwise, the factors of typicality and representativeness under Rule 23(a) will not be satisfied.

### B.    Rule 23(b)

A case meeting all four requirements of Rule 23(a) must also meet the requirements of at least one of the requirements of Rule 23(b) to proceed as a class action.  <u>Jones v. NovaStar Financial, Inc.</u>, 257 F.R.D. 181, 192 (W.D. Mo. 2009).  Plaintiffs assert that their claims should be certified under Rule 23(b)(1), (b)(2), or alternatively under and Rule 23(b)(3).  (Docket 177).  The Court begins its analysis with Rule 23(b)(1).

Fed. Rule Civ. P. 23(b)(1) provides:

> (1)    prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class: or
>
> (B) adjudications with respect to individual class members that, as a practical matter would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

Subsection A is an attempt to avoid prejudice to the defendants opposing a class while Subsection B of the rule attempts to protect members of the proposed class.  <u>Jones</u>, 257 F.R.D. at 193.  As one court has noted, breach of fiduciary duty claims under ERISA § 502(a)(2) "are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class."  <u>In Re Schering Plough ERISA Litigation</u>, 589 F.3d 585, 604 (3d Cir. 2009).  "What is relevant is that *plaintiff's claims* about defendants' conduct are sufficiently similar to those of the proposed class and are not based

on the 'unique fact' and individual relationships with the defendants.'" <u>Id.</u> at 604 (emphasis in

original). The court further noted that given the claim is "brought on behalf of the Plan and alleging

breaches of fiduciary duty on the part of defendants that will, if true be the same with respect to

every class member, Rule 23(b)(1)(B) is clearly satisfied." <u>Id.</u> at 605.

Defendants rely on <u>Langbecker v. Electronic Data Sys. Corp.</u>, for the proposition that class

certification is improper under Rule 23(b)(1)(B). 476 F.3d at 318 (5th Cir. 2007). A district court

in this circuit distinguished <u>Langbecker</u>, noting (1) it is a Fifth Circuit case not binding in this

circuit, and (2) that it is a "limited fund" case related to the loss in value of a stock fund which

created irresolvable conflicts between the proposed members of the class. <u>Jones</u>, 257 F.R.D. at 194.

Moreover, the conclusion that a class should be certified in this case is supported by <u>Braden v. Wal-</u>

<u>Mart Stores, Inc.</u>, 588 F.3d 585 (8th Cir. 2009). In <u>Braden</u> an employee brought a putative class

action against the employer alleging violation of fiduciary duties under ERISA for failure to procure

the best price for mutual funds purchased by the Wal-Mart defined contribution fund. <u>Id.</u> at 590.

The court reversed the trial court finding of no standing, reasoning that Plan participants have

standing to bring a suit under Rule 23 on behalf of individuals affected by the Plan fiduciaries'

breach. <u>Id.</u> at 593.

This case is about the value of the shares paid by the ESOP for the purchase of shares at the

time the ESOP was created. If the price paid was fair market value or higher, the Plan fiduciaries

owe the Plan nothing. If the share price paid was too high, Plaintiffs seek to trace those proceeds

from the sale price above fair market value and recover the extra paid on behalf of the Plan. Thus,

one of the questions at trial will be whether the Plan fiduciaries breached their duties to the Plan

participants by buying TMI shares above fair market value and if so what was the fair market value

of the shares at the time the transaction or transactions were consummated during the course of the ESOP formation.  If a breach of duty is found, applying trust principles, a court can order the excess disgorged together with the proceeds of those trust assets and such disgorged proceeds will be returned to the Plan.  Varity Corp. v. Howe, 516 U.S. 489, 497 (1996).

In resolving these issues, one court could find a breach of the duty and another might not. Therefore, a single adjudication of Plaintiffs' claims is proper under Rule 23(b)(1)(B).  Similarly, two different courts taking testimony on the fair market value of the shares in 1998 or 1999 could reach different valuations, or one court could find the sale took place at fair market value and another could conclude that it was below (or above) fair market value.  A determination of the value of the stock at the time of the formation of the ESOP has an effect on every member of the proposed class and thus certification is proper under Rule 23(b)(1)(A).  The real possibility of inconsistent results makes this case a proper one for class certification.

### C.       Resolving the Conflict Between Past and Present Employees

Based on the foregoing analysis, this is a proper case for class certification, but not in the manner Plaintiffs propose.  The interests between the current employees of TMI, who hold shares in TMI that are apparently appreciating, cannot be reconciled with the interests of the former employees of TMI who hold no shares of TMI and therefore do not have a stake in the continued successful operation of TMI.  Under these circumstances, the Court finds that two subclasses of Plaintiffs should be certified with separate representation for each class.  The subclass consisting of former employees of TMI are fairly represented by the named Plaintiffs and their counsel of record.  The current employees, represented by the two individuals named during the evidentiary hearing, have interests that are adverse to the named Plaintiffs, and, therefore, they should be

certified as a separate subclass and represented by separate counsel.

A court's orders regarding case management are interlocutory.  Before the entry of final judgment a court may reverse its order if the interests of justice so require.  Fed. R. Civ. P.  54(b) provides that when fewer than all claims are resolved, the district court may direct entry of final judgment, but in the absence of such an order any other decision that adjudicates fewer than all the claims is subject to revision any time before the entry of final judgment. <u>K.C. 1986 Ltd. Partnership v. Reade Mfg.</u>, 472 F.3d 1009, 1017 (8th Cir 2007).  At least one court has applied this principle in the context of jurisdiction to reconsider an order on intervention.  <u>King Lincoln Bronzeville Neighborhood Ass'n v. Blackwell</u>, No. 2:06-cv-0745, 2009 WL 5066912 (S.D. Ohio Dec. 22, 2009) (unpublished).

North Star Trust Company is the present Trustee of the ESOP.  North Star is also the ESOP trustee for over 75 other plans.  North Star moved to intervene in this action and produced evidence of its capacity to represent the entire class.  (Docket 316, Tr. 184).  On January 15, 2010, North Star filed a "Notice of Withdrawal Without Prejudice" of its motion to intervene.  (Docket 409).  This Court allowed the withdrawal in its Order dated March 10, 2010.  (Docket 433).  In further examining all of the claims in this case and the evidence regarding class certification, the Court believes its previous order allowing North Star to withdraw was improvident and therefore will vacate its Order at Docket 433 to the extent that it constitutes a finding that the Motion to Intervene by North Star was rendered moot by North Star's subsequent Notice of Withdrawal.

Counsel for North Star has appeared in this case and appears capable to the Court.  Furthermore, North Star is already a fiduciary to the Plan and is obligated to operate in the Plan's interests.  North Star most recently appeared through attorneys Alton L. Gwaltney, Benjamin P.

Fryer, and Mark A. Nebring.  These attorneys are competent and capable of representing the class of present employee Plan participants.  North Star and its lawyers have been aware of this litigation from its inception and have been directly involved for eighteen months.  They are familiar with the factual background and the rulings in the case.  They have participated in the hearings and reviewed the discovery.  North Star is obligated to protect the interests of the Plan participants and is not in a position to injure the interest of those who have either taken a cash distribution or are now invested in the stable value fund.  Appointing North Star as class representative of the proposed current employee class, is in the best interests of the current employees, will keep this litigation on schedule, and will avoid the likelihood of a continuance.  Accordingly, North Star's motion to intervene is **GRANTED**, and the law firms of Moore & Van Allen PLLC and Skadden, Arps, Slate, Meagher & Flom LLP are appointed counsel for this subclass of current Plan participants.

      **D.**     **Class Definitions**

The Court defines the two subclasses as follows: (1) Former Employee Class, and (2) Current Employee Class.

      1.     Former Employee Class

The Former Employee Class is defined as all persons, other than the Defendants in this action, members of their immediate families, their legal representatives, heirs, successors or assigns of any excluded party, who were participants in the Tharaldson Motels, Inc. Employee Stock Ownership Plan at any time from December 30, 1998 to the present and who received an allocation of Plan assets to their accounts which they did not subsequently forfeit under the terms of the Plan and the beneficiaries of such Plan participants and who are Plan participants or beneficiaries in the Plan on or after May 15, 2006 and who are no longer employees of TMI.

2.      Current Employee Class

The Current Employee Class is defined as all persons, other than the Defendants in this action, members of their immediate families, their legal representatives, heirs, successors or assigns of any excluded party, who were participants in the Tharaldson Motels, Inc Employee Stock Ownership Plan at any time from December 30, 1998 to the present, who received an allocation of Plan assets to their accounts which they did not subsequently forfeit under the terms of the Plan, who are participants in the Plan on or after May 15, 2006 and who are present employees of Tharaldson Motels, Inc.

**E.      Notification to Plan Participants**

Notice to the two subclasses is not required under Fed. R. Civ. P. 23(b)(1).  <u>Jones</u>, 257 F.R.D. at 194.  Rule 23(c), however, permits a court to direct appropriate notice to the class.  <u>Id</u>.  The Court believes it is in the interest of justice to notify the members of each class because substantial rights to all Plan participants are implicated by this case.  Counsel for both subclasses and the fiduciary Defendants are each directed to submit a proposed notice and method of notification, together with a cost estimate of the proposal to the Court no later than June 1, 2010.

<u>**DECISION**</u>

For all the foregoing reasons, the Court orders as follows:

(1)      Defendants' Motion for Leave to File Supplemental Briefs and to Exceed the Page Limit for Memoranda is **DENIED** (Docs. #415, 419, & 422).

(2)      Plaintiffs' Motion for Class Certification is **GRANTED** in part and **DENIED** in part (Doc. #176).  The motion is granted to the extent that class certification is appropriate under Fed. R. Civ. P. 23, and denied to the extent it proposes a single class.  Raymond Hans, Gayle Herbert, Jeremy Jackey, Chuck LeBlanc, Larry Richman, Donna Walker, and Michael Webster are appointed representatives of the Former Employee Class.

(3)       Plaintiffs' Motion for Appointment of Class Counsel is **GRANTED** (Doc. #274). The law firm of Cohen, Milstein, Hausfeld &Toll is appointed counsel for the Former Employee Class.  The law firm of Solberg, Stewart, Miller & Tjon is appointed liaison counsel for this subclass.

(4)       The Court vacates its prior order dated March 10, 2010 (Doc. #433) only to the extent that it found North Star Trust Company's Motion to Intervene moot.

(5)       North Star Trust's Motion to Intervene is **GRANTED** (Doc. #264) and its Notice to Withdraw its Motion to Intervene is **DENIED** (Doc. #409).  Plan Trustee North Star Trust Company is hereby appointed class representative of the Current Employee Class.  The law firms of Moore & Van Allen PLLC and Skadden, Arps, Slate, Meagher & Flom LLP are appointed counsel to represent this subclass.

**IT IS SO ORDERED.**

Dated this 7th day of May, 2010.


/s/ Ralph R. Erickson            
Ralph R. Erickson, Chief Judge
United States District Court